**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

MICHAEL GASTON                                   :
                                                 :
                       Plaintiff,                :        CASE NO. 2:17-cv-1151
            v.                                   :
                                                 :        Judge James L. Graham
NORFOLK SOUTHERN RAILWAY                          :
COMPANY                                           :
                                                 :
                       and                       :        JURY TRIAL DEMANDED
                                                 :
ALEXANDRA B. WALLMAN                              :
                                                 :
                       Defendants.               :

**PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

  This is an action brought against Norfolk Southern Railway Company ("NS") under the Federal Employers' Liability Act, 45 U.S.C.A. §§51, et seq. (1908) ("FELA") and against Alexandra Wallman under common law negligence arising from a crossing accident that occurred at Route 7 at the location of the Nichols Bakery. Plaintiff is alleging (and has made a proper *prima facie* showing by producing more than a scintilla of evidence to prove) that NS is both *negligent* and *negligent as a matter of law* (as it was in violation of federal regulations). NS is *negligent* under FELA for failing to provide Plaintiff a safe workplace, by instructing and/or ordering him to ride the steps of the locomotive across the Route 7 crossing.  NS is also *negligent* for instructing Plaintiff to get his train moving without any delay (rather than provide sufficient "warning" to traffic) through that specific crossing.[1]  In addition, NS is *negligent as a matter of law* for violating a federal regulation, 49 CFR § § 222.21(d), as the engineer failed to blow the horn for more than fifteen seconds before entering the public railroad crossing at without properly determining that there were no conflicting highway movements.

  NS claims summary judgment is warranted on Plaintiff's FELA negligence claim, in pertinent part, because: (1) the instruction to ride the sill steps was not a written rule, and thus

_____

[1] Plaintiff also asserted a "negligent training" claim, which he will not pursue at trial.

Plaintiff was not obligated to follow it; and (2) Defendant Wallman's negligence was the sole cause of the incident. NS also claims that summary judgment is warranted on Plaintiff's regulatory violation that NS violated the "the horn rule" (49 CFR § § 222.21(d)) because: (1) the locomotive was stopped and there were no conflicting highway movements; and (2) there is no evidence that violation of "the horn rule" *caused* the incident. For the foregoing reasons, NS arguments should be rejected and its motion for Summary Judgment DENIED.

**FACTS**

On the early morning of February 6, 2016, NS freight conductor Michael Gaston was injured when he was riding on the outside steps of a locomotive across a public railroad crossing at Route 7 in Martins Ferry, Ohio. Route 7 is equipped with automatic warning devices consisting of cantilevered and mast mounted flashing lights activated by a button by the train crew.

Prior to the incident, there were prior accidents at this exact crossing ( Deposition of Mark Gaston attached as Exhibit "A" at 189) ("we've had trains hit there before"), while Plaintiff and other NS conductors had also experienced multiple "near miss" incidents due to traffic not observing crossing warnings. Exhibit "A" at 187-88. Indeed, the crossing at Route 7 was considered "dangerous." Exhibit "A" at 188 ("Q, What did you find dangerous? A. The crossing itself, running at night, you're susceptible to getting hit all the time there. I had close calls...."). Plaintiff had previously complained about performing work at this location at night (Exhibit "A" at 107-08) and had even requested more manpower (Exhibit "A"at 72), but to no avail. Engineer Mark Czup, too, had previous close calls at that crossing and had made prior complaints to his union safety committee representative. See Deposition of Mark Czup attached as Exhibit "B" at 21.

Despite the known danger and the prior complaints, however, NS Supervision directed that the standard protocol for moving an Engine from the Nichols Bakery side of Route 7 to the river side is as follows: (a) the conductor activates the cantilever lights that operate on Route 7 to warn traffic of the presence of a train; and (b) the Engineer then sounds the horn sequence prior to and during the during the crossing and activates the lights and ditch lights on the locomotive. See Deposition

-2-

of Lawrence Sargent attached as Exhibit "C" at 49. Once the crossing lights at SR7 were activated, NS Supervision had specifically directed the Plaintiff (as well as during training) to get the train immediately moving through the crossing, and to remain on the outside steps of the locomotive until the Engine finished crossing Route 7, so as to not delay the train. See Exhibit "A" at 74-77, 187-91.[2] Any such action directed by supervision is presumed to be safe. Exhibit "D" at 55. Such a specific oral direction would necessarily overrule any general rules of conduct issued by NS. Exhibit "D" at 113. Indeed, failure to follow such an instruction would be insubordination. Exhibit "A" at 71-72; Exhibit "D" at 55; Deposition of Patrick Reilly, attached as Exhibit "E", at 132.

On the early morning of February 6, 2016, Plaintiff and Engineer, Mark Czup, had just completed switching operations at the Nickols Bakery plant. Plaintiff checked the roadway primarily to determine if there were any fire trucks or ambulances coming. Exhibit "A" at 81. But the highway was not necessarily clear, as Plaintiff was looking primarily for ambulances and emergency vehicles ("I'm not saying there wasn't maybe a car coming south or something like that, just maybe a straggler, but there was no fire trucks, ambulances. Those are the kind of things I look for mainly").[3] Exhibit "A" at 81. There is no evidence that Engineer Czup performed any action whatsoever at that time. Exhibit "B' at 16-17. Then Plaintiff turned on the crossing lights and radioed his Engineer to proceed. Exhibit "A" at 58, 81, 83. This took less than 4 seconds. Exhibit "B" at 23-24. Engineer Czup then immediately began moving the locomotive to occupy the crossing while also beginning to blow the locomotive's horn. Exhibit "B" at 25. As the locomotive traveled across the crossing, Plaintiff could only look to the north. Exhibit "A" at 83.

Defendant Alexandra Wallman was leaving her hostess job and operating her motor vehicle on Route 7 traveling north. See Deposition of Alexandra Wallman attached as Exhibit "F" at 14-24. When she first saw the crossing lights she had already past the painted markings on the street. See

---

[2]Of course not all instructions need be in written form. Instructions also come by way of face to face communication. See Deposition of Paul Byrnes, attached as Exhibit "D", at 113.

[3]Plaintiff also testified that he does not remember what he saw, but does not recall seeing any cars on the highway that evening. Exhibit "A" at 81.

Exhibit "F" at 35, 53.  As the locomotive began across the crossing, Engineer Czup spotted the Wallman car switching lanes and aiming at the locomotive.  Exhibit "B" at 17-18.  Suddenly, Wallman saw train lights in the middle of the road.  Exhibit "F" at 40-41. She immediately slammed on her breaks and her car skidded and struck the train.  Exhibit "F" at 42.  Engineer Czup did nothing to slow or stop the train until impact.  Exhibit "B" at 41. In fact, the Engineer did not place the locomotive into "Emergency" until after the collision had occurred.  Exhibit "B" at 29.  Wallman estimated that less than 10 seconds occurred from the activation of the lights to impact (Exhibit "F" at 54, 68) while Gaston estimated it at fifteen seconds (Exhibit "A" at 192). At impact, Mr. Gaston was located on the outside steps of the locomotive - as he had been directed by Supervision.  Exhibit "A" 68, 73.[4]  The car struck the locomotive only inches or a foot away from where Plaintiff was standing on the steps.  Exhibit "B" at 32.  Plaintiff sustained significant injuries to his back which were caused by his position *vis a vis* the impact of the car and train.  See August 29, 2019 and September 2, 2019 Reports of Eugene Bonaroti, MD, attached as Exhibit "K".

Plaintiff is alleging that NS is both *negligent* and *negligent as a matter of law* (as it was in violation of federal regulations).  NS is *negligent* under FELA for failing to provide Plaintiff a safe workplace.  Specifically, Plaintiff alleges that NS is negligent for instructing and/or ordering Plaintiff to ride the steps of the locomotive across Route 7.[5]  See Exhibit "E" at 130; September 4, 2019 Report of Paul Byrnes, attached as Exhibit "G", at 13; Report of Patrick Reilly attached as Exhibit "H", at 15.  NS is also *negligent* for failing to provide Plaintiff a reasonably safe workplace, as NS instructed Plaintiff to get his train moving without any delay (rather than provide sufficient

---

[4]Plaintiff described the impact as follows:
The train went into emergency, which gave us a big jerk, at the same time the car hit us and it, like, jarred. It was an impact, like..., you would want to run up those stairs to get away from it. I couldn't get my footing because things were being thrown around. I was being basically thrown around trying to hold on and grab ahold of things. I was just trying to get away.
Exhibit "A" at 93-94.

[5]Finterestingly, fllowing the incident, Trainmaster Sargent issued a "local instruction" ordering that conductors never to ride on the sill steps or on the platform of the locomotives when crossing Route 7.  Exhibit "C" at 51.

-4-

"warning" to traffic) through the crossing. Exhibit "E" at 35; Exhibit "G" at 3, 4, 13, 15; Exhibit "I" at 4. NS was in violation when the locomotive began to occupy the crossing less than fifteen seconds after the warning lights were activated. Exhibit "D" at 115. Exhibit "G" at 13, 15.

In addition to his claims of FELA negligence, Plaintiff is also claiming that NS is *negligent as a matter of law* or *negligent per se* for violating a federal regulation.[6] Federal law requires that a locomotive horn be blown for a sufficient period of time prior to a locomotive "occupying a crossing." Exhibit "C" at 56. "Occupying a crossing" occurs when any part of the locomotive is on any part of the public right of way road crossing. Exhibit "C" at 57. In this regard, 49 CFR § § 222.21(d) (emphasis added) states as follows:

> Trains, locomotive consists and individual locomotives that have stopped in close proximity to a public highway-rail grade crossing may approach the crossing and sound the locomotive horn for less than 15 seconds before the locomotive enters the highway-rail grade crossing, *if the locomotive engineer is able to determine that the public highway-rail grade crossing is not obstructed and* either: (1) The public highway-rail grade crossing is equipped with automatic flashing lights and gates and the gates are fully lowered; or (2) *There are no conflicting highway movements approaching the public highway-rail grade crossing.*

This rule specifically sets forth certain actions by the locomotive engineer, while not requiring any conduct or action by a conductor. Exhibit "D" at 115. The Engineer must first determine that there are no conflicting highway movements. Exhibit "E" at 113. In this case, Mr. Byrnes has opined that the record reflects that, prior to occupying the crossing, there were - in fact - conflicting highway movements approaching the crossing. Exhibit "D" at 115. Indeed, the presence of "conflicting highway movements" is specifically evidenced by the Exhibit "D" at 115. Given Engineer Czup's elevated position in the locomotive, he should have seen the oncoming headlights of the Wallman vehicle. Exhibit "G" at 14. That means that the horn was required to be blown for no less than fifteen seconds. Significantly, it is undisputed that failure to properly blow the engine horn therefore violates federal law. Exhibit "C" at 56-57, 59.

---

[6] Officer Vincent West, the Martin's Ferry Police officer who investigated this incident, did not know, or consider, whether or not NS was in violation of any federal regulations when preparing his report in this matter. See Deposition of Vincent West, attached as Exhibit "J", at 56.

Here, there is evidence that only fifteen seconds or less elapsed from the moment that Plaintiff first pushed the button to activate the crossing lights until the incident. Exhibit "A" at 192; Exhibit "F"  at 54, 68. The horn began to be blown only after the crossing lights were activated. Exhibit "B" at 25.  And the train began to occupy the crossing "immediately" thereafter.  Exhibit "C" at 25.  Engineer Czup estimated that less than five seconds elapsed from the activation of warning lights till the locomotive was   occupying the crossing.  Exhibit "B" at 23-24.  That means, by definition, that the locomotive began to occupy the crossing less than fifteen seconds after the horn began to be blown.  This was substantiated by Mr. Byrnes's reading of the locomotive's electronic data downloads.  Exhibit "G" at 13.  This, of course, constitutes a violation of 49 CFR § § 222.21(d). Exhibit "G" at 13; Exhibit "H" at 16.

For its part, NS has admitted that Plaintiff had done nothing improper or in violation of any rule. Exhibit C" at 31, 55.  Exhibit "H" at 15.

## SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Van Gorder v. Grand Trunk Western R.R., Inc., 509 F.3d 265 (6th Cir. 2007). The purpose of the rule, however, is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir.1994).

When reviewing a summary judgment motion, all the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to

the party opposing the motion, and the Court must refrain from making credibility determinations or weighing the evidence. Waggoner v. Ohio Central R.R., Inc., 2007 WL 4224217 (S.D. Ohio, November 27, 2007) citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Pittman v. Cuyahoga Cnty Dept. of Children and Family Serv., 640 F.3d 716, 723 (6th Cir. 2011). The Court disregards all evidence favorable to the moving party that the jury would not be *required* to believe. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). Summary judgment will not lie if there is a genuine dispute about a material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Barrett v. Whirlpool Corp., 556 F.3d 502, 511 (6th Cir. 2009). Thus, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Pittman, 640 F.3d at 723 (quoting Anderson, 477 U.S. at 251-52).

## ARGUMENT

This case has been brought by Plaintiff against NS under the FELA. The FELA provides in substance that every railroad engaged in interstate commerce shall be liable in damages for injuries to its employees resulting in whole or in part from the negligence of any of its officers, agents or employees or from any defect or deficiency, due to its negligence, in its cars, machinery, track, roadbed or work areas. 45 U.S.C.A. §§51. The Act imposes on the defendant railroad a duty to the plaintiff, and to all its employees, to exercise reasonable care to provide him with a reasonably safe place in which to work, reasonably safe conditions in which to work and reasonably safe tools and equipment.[7]

FELA is a "'remedial and humanitarian statute ... enacted by Congress to afford relief to

---

[7]Shenker v. Baltimore & Ohio Railroad Co., 374 U.S. 1, 7 (1963); Urie v. Thompson, 337 U.S. 163, 178 n.16 (1949); Bailey v. Central Vermont R. Co., 319 U.S. 350 (1943). See also Borger v. CSX Transp., Inc., 571 F.3d 559, 563 (6th Cir. 2009) (citing Aparicio v. Norfolk & W. Ry. Co., 84 F.3d 803, 807, 810 (6th Cir. 1996), *abrogated on other grounds*, Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 149 (2000)).

employees from injury incurred in the railway industry.'" Aparicio, 84 F.3d at 807 (quoting Edsall v. Penn Cent. Transp. Co., 479 F.2d 33, 35 (6th Cir.1973)). The FELA represents "an avowed departure from the rules of common law." Recognizing the "special need" to protect railroaders from the inherently dangerous nature of the their work, Sinkler v. Missouri Pac. R.R.Co., 356 U.S. 326, 329 (1958), Congress enacted the statute to "shift part of the human overhead of doing business" from the employees to their employers. Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542 (1994). The Act strips employers of their common law defenses of assumption of the risk and contributory negligence as a bar to recovery, Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506 (1957), and abandons general concepts of proximate cause. Green v. River Term. Ry., 585 F. Supp. 1019, 1024 (N.D. Ohio 1984), aff'd, 763 F. 2d 805 (6th Cir. 1985). "In light of the remedial purposes underlying the FELA, that Act is to be liberally construed in favor of the injured plaintiff." Green, 763 F.2d at 806.

Under FELA, Plaintiffs may establish the railroad's liability in one of two ways. A plaintiff may establish the railroad's liability "by proving the 'traditional common law elements of negligence: duty, breach, foreseeability, and causation'" (Borger v. CSX Transp., Inc., 571 F.3d 559, 563 (6th Cir.2009)(quoting Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir.1990)) or the Plaintiff may establish negligence *per se* by showing the railroad violated a statute or regulation which imposed an "absolute duty" on the company. Borger, 571 F.3d at 563.

## A.   NEGLIGENCE UNDER THE FELA

In order to establish FELA negligence, an injured employee must prove the traditional common law elements of duty, breach, foreseeability, and causation" Van Gorder, 509 F.3d at 269."Under FELA, a railroad has a duty to provide its employees with a reasonably safe workplace." VanGorder, 509 F.3d at 269. A railroad breaches its FELA duty "when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe." Van Gorder, 509 F.3d at 269. To be actionable, therefore, the railroad must have known or should have known that the standards of

conduct were not adequate to protect its employees. Van Gorder, 509 F.3d at 269–70.

A railroad is guilty of negligence if it fails to prevent reasonably foreseeable danger to an employee. Green, 763 F.2d at 808. However, "the particular and exact manner of the accident need not be foreseen." Green, 763 F.2d at 808 (quoting McCracken v. Richmond, Fredericksburg and Potomac Railroad Co., 240 F.2d 484, 487 (4th Cir.1957)). To prove foreseeability, therefore, a Plaintiff must only show that Defendant "should have foreseen that its conduct 'would or might result in a mishap or injury." Gallick v. Baltimore & O.R. Co., 372 U.S. 108, 118 (1963). Thus, "[t]he test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that an injury might occur...." Green, 763 F.2d at 808 (quoting Miller v. Cincinnati, New Orleans & Texas Pacific Railway Co., 203 F.Supp. 107, 113 (E.D.Tenn.1962), aff'd, 317 F.2d 693 (6th Cir.1963).

With respect to reasonable foreseeability, an essential element is actual or constructive notice to the employer of the defective condition that caused the injury. See Sinclair v. Long Island R.R., 985 F.2d 74, 77 (2d Cir.1993). "Notice" and "forseeability," however, present issues of fact, and "as with all factual issues under FELA, the right of the jury to pass on [them] must be liberally construed." Gallose v. Long Island R.R. Co., 878 F.2d 80, 85 (2d Cir.1989). Significantly, a jury may impute actual knowledge of a dangerous condition or defect to the railroad if its officers, agents, or employees knew or should have known of the condition. See Gallick, 372 U.S. 108. It may also impute knowledge of a dangerous condition or defect to the railroad if the evidence reveals that the hazard has existed for a sufficiently long period of time that the defendant, upon reasonable inspection, should have discovered it. See Baltimore & Ohio R.R. v. Flechtner, 300 F. 318 (6th Cir. 1924). Furthermore, the 6th Circuit has held that the failure to take measures to address known risk factors at the workplace may constitute a breach of the duty owed by an employer to its employees. Aparicio, 84 F.3d at 812.

Not surprisingly, in an FELA case, liability may be inferred completely from circumstantial

evidence.  See Rogers v. Missouri Pacific R.R., 352 U.S. 500, 508 n. 17 (1957)[8]; Mendoza v. Southern Pacific Transportation Co., 733 F.2d 631 (9th Cir. 1984); Pekowic v. Erie Lackawanna R.R., 430 F.2d 697 (3d Cir. 1970).  It may be based exclusively on inferences drawn from the facts and circumstances of the case which, in light of ordinary experience, reasonably suggest that the railroad's negligence played even the slightest part in producing plaintiff's injury.  See Henwood v. Coburn, 165 F.2d 418 (8th Cir. 1948).

In light of the Act's remedial purpose, however, the causation requirement is more "relaxed". CSX Transp., Inc. v. McBride, 564 U.S. 685, 692, 705 (2011).  Thus, the standard for submitting an FELA case to the jury is also much less stringent than in the ordinary negligence action.  Rogers, 352 U.S. at 506; Mendoza, 733 F.2d at 633.  The "test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the *slightest*, in producing the injury."  Rogers, 352 U.S. at 506 (emphasis added).

> It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.  Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury...Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allow the jury a choice of other probabilities.

Rogers, 352 U.S. at 507.

Indeed, only "slight" or "minimal" evidence of negligence is needed to raise a jury question in an FELA action.[4]  In a FELA case, therefore, "a plaintiff must present 'little more than a scintilla' of evidence 'given the Supreme Court's view that Congress has favored [the FELA] plaintiffs with a jury resolution of all colorable issues." Borger, 571 F.3d at 565, quoting Aparicio, 84 F.3d at 810. This is because the right to jury trial is "part and parcel of remedy afforded" under the FELA. Bailey,

---

[8]"Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Rogers, 352 U.S. at 508 n. 17.

[4]See e.g. Mullahon v. Union Pac. R.R., 64 F. 3d 1358, 1363-64 (9th Cir. 1995); Mendoza, 733 F. 2d at 632; Ybarra v. Burlington Northern, Inc., 689 F. 2d 147, 149 (8th Cir. 1982; Burns v. Penn Cen. Co., 519 F. 2d 512, 514 (2d Cir. 1975).

319 U.S. at 354. [5] And the power of a jury to "pass upon" issues of fault and causation "must be most liberally viewed." Johannessen, 633 F.2d at 656; O'Connell, 922 F. 2d at 1042 (citing Eggert, 538 F. 2d at 511 (a jury's role " is significantly greater in FELA cases than in common law negligence actions'). To deprive FELA plaintiff's of the benefit of jury trials in close or doubtful cases" is to "take away a goodly portion of the relief... Congress has afforded the," under te statute. Bailey, 319 U.S. at 354.

Plaintiff has asserted that NS was negligent under FELA for failing to provide Plaintiff a safe workplace. Specifically, NS is liable for instructing and/or ordering the Plaintiff to ride the steps of the locomotive across the Route 7 crossing. NS is also negligent for instructing Plaintiff to get his train moving without any delay (rather than provide sufficient "warning" to traffic) through that crossing. NS claims that there is no genuine dispute as to any material fact on the following issues: (1) the instruction to ride the sill steps was not a written rule, and thus Plaintiff was not obligated to follow it; and Defendant Wallman's negligence was the sole cause of the incident. Despite the railroad's arguments, viewing all the evidence and facts, as well as inferences to be drawn from the underlying facts, in the light most favorable to the Plaintiff, Plaintiff has established a *prima facie* case for negligence under FELA.

## B.     PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE FOR FELA NEGLIGENCE RESULTING FROM DEFENDANT NS' INSTRUCTION THAT PLAINTIFF RIDE ON THE STEPS OF THE LOCOMOTIVE THROUGH THE ROUTE 7/NICHOLS BAKERY CROSSING

There is no question that NS had a duty to provide Plaintiff with a reasonable safe place to work. NS does not dispute that it had a duty to exercise reasonable care to protect Plaintiff, an employee. NS breached its duty in multiple ways, including instructing Plaintiff to ride on the side steps of the locomotive as it crossed through the Route 7 crossing. Indeed, it is axiomatic that failure to provide proper instruction to its workers is a viable theory of negligence under FELA. Not

---

[5]See Atlantic & Gulf Steverdores, Inc. V. Ellerman Lines, Ltd., 369 U.S. 355, 360 (1962); O'Connell v. Nat'l R.R. Pass. Corp., 922 F. 2d 1039, 1042 (2d Cir. 1991); Johannessen v. Gulf Trading & Trans. Co., 633 F. 2d 653, 656, (2d Cir. 1980).

surprisingly, the Modern Federal Jury Instructions directs jurors that:

> you may find the defendant negligent if you find that it instructed its employees to perform tasks with a procedure or method which it knew, or in the exercise of reasonable care should have known, would result in injuries.

5 L. Sand, et al., Modern Federal Jury Instructions, Instruction 89-18 (2020).

In the case at bar, Plaintiff has presented factual testimony that NS Supervision - in order to never delay trains and highway traffic at Route 7/Nichols Bakery - had specifically directed the Plaintiff to ride on the outside steps of the locomotive when traveling over that specific crossing. See Exhibit "A" at 74-77, 187-91. In light of this evidence, Plaintiff has presented expert reports and testimony that specifically opine that NS is failed to provide Plaintiff a safe workplace by instructing and/or ordering Plaintiff to ride the steps of the locomotive across Route 7. See Exhibit "E" at 130; Exhibit "G", at 13; Exhibit "H", at 15. There is also no dispute that it is foreseeable that an injury might occur to someone riding on the side steps of a locomotive that is crossing over a public highway crossing at night. the crossing at Route 7 was considered "dangerous." Exhibit "A" at 188. Indeed, NS had sufficient notice of the danger as there were prior accidents at this exact crossing (Exhibit "A" at 189) ("we've had trains hit there before") as well as multiple near miss incidents due to traffic not observing crossing warnings. Exhibit "A" at 187-88; Exhibit "B" at 21. And, at the very least, both Plaintiff (Exhibit "A" at 107-08) and Engineer Czup (Exhibit "B" at 21) had voiced prior complaints about the dangers of working at that crossing.

Rather, NS seeks summary judgment only on the grounds that supposedly Plaintiff cannot establish *causation*. Causation, of course, is by far the easiest FELA standard for a Plaintiff to meet, particularly where NS's duty and breach are essentially uncontested. The FELA standard of proof regarding causation is, indeed, "relaxed." VanGorder, 509 F.3d at 269 (citing Rogers, 352 U.S. at 506 ("test of a jury case is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury."). Under FELA, the causation standard "'is as broad as could be framed.'" Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542-43 (1994) See also Eggert, 538 F.2d at 511-12 ("court failed to apply [FELA jury] test with the

-12-

breadth and liberality required by the controlling authorities"; "plaintiff's evidence consisted, in the main, of his own testimony at trial."). "It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes..." Rogers, 352 U.S. at 506.[6] Plaintiff "need only show that its negligence contributed even slightly to his injury." VanGorder, 509 F.3d at 269. "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." Lavender v. Kurn, 327 U.S. 645, 653 (1946).

Here, the evidence demonstrates that NS Supervision specifically directed the Plaintiff to remain on the outside steps of the locomotive until the locomotive finished crossing Route 7, so as to not delay the train. See Exhibit "A" at 74-77, 187-91. Such a specific oral direction would necessarily overrule any general rules of conduct issued by NS. Exhibit "D" at 113. Indeed, failure to follow such an instruction would be insubordination. Exhibit "A" at 71-72; Exhibit "D" at 55; Exhibit "E", at 132. That oral instruction to Plaintiff was the key action that caused Plaintiff to be placed into the position of being only a foot or less (Exhibit "B" at 32) from the impact between the train and car. And, being in that position was the medical cause of Plaintiff's injuries. Exhibit "K".

Despite not contesting duty, NS does seem to contest breach - at least to some trivial extent - when it argues that "there is no written record of this incident to corroborate Gaston's self-serving account of this alleged conversation." But NS has produced no authority whatsoever to suggest that a "written" record is necessarily required. Indeed, NS never actually states that an oral instruction is without significance. To the contrary, written documentation is not the only type of evidence admissible to support an FELA claim; Plaintiff's sworn deposition testimony provides sufficient evidence to create a question of fact. See St. Amant v. National R.R. Passenger Corp., 2012 WL 3156544 at *5 (E.D. Mich. August 3, 2012). NS also attaches to its motion an affidavit that purports

---

[6] Plaintiff does not dispute that Defendant Wallman is also negligent, just that she is the *sole* cause of the incident. Thus, Plaintiff is pursuing claims against both parties as he believes - and as the evidence establishes - that both share responsibility for causing his damages. Under FELA, of course, a railroad cannot avoid liability in matters where there are joint tortfeasors of unequal responsibility. See e.g. Coffey v. Northeast Illinois Regional Commuter R.R. Corp. (METRA), 479 F.3d 472, 476 (7th Cir.2007).

to claim that SAT teams were not present at that Route 7 crossing - when Plaintiff was working - for "a year pre-accident." Plaintiff testified that he had been approached by the aforesaid SAT team "probably a year or so before [the incident]." Exhibit "A" at 77. The affidavit - which addresses only from November 2014 through March 2015 - is clearly meant to question the credibility of Plaintiff's sworn testimony that he was instructed to ride the steps by a SAT team. Plaintiff's testimony, "self-serving" though it (and all testimony) may be, is nevertheless permissible evidence. And, FELA cases may rest solely upon such testimony. See Eggert, 538 F.2d at 511-12; St. Amant, 2012 WL 3156544 at *5. In any event, NS's attempt to question Mr. Gaston's *credibility* regarding his account, under oath, of receiving any such oral instruction goes only to his credibility - an issue not before this Honorable Court (e.g. Matsushita, 475 U.S. at 587). Therefore, there is "more than a scintilla of evidence" from which a reasonable jury could find for the Plaintiff, and thus Plaintiff has established a genuine dispute about a material fact such that summary judgment is not warranted on this issue. Anderson, 477 U.S. at 248 (1986); Borger, 571 F.3d at 565; Barrett, 556 F.3d at 511.

## C. NEGLIGENCE *PER* SE UNDER THE FELA

In addition to his claim of negligence, Plaintiff is also asserting that the Defendant NS is liable for negligence *per se* for its violation of a certain safety regulation (49 CFR § 222.21(d))[7] promulgated by the FRA and directed at the railroad. It is well established that "[a] railroad's violation of a safety statute ... is negligence per se." McBride, 131 S.Ct. at 2643 n. 12; Lynch v. Ne. Reg'l Commuter R.R. Corp., 700 F.3d 906, 911 (7th Cir.2012) ("FELA imposes strict liability on railroad carriers who violate certain safety statutes ...."). See also Walden v. Illinois Cent. Gulf R.R.,

---

[7]In 1970, Congress enacted the Federal Railroad Safety Act (FRSA) "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C.A § 20101. FRSA authorizes the Secretary of Transportation to prescribe regulations for every area of railroad safety, supplementing laws and regulations in effect at the time of FRSA's enactment. 49 U.S.C. § 20103(a). The aforesaid regulation was enacted under authority of that law. For the "purpose" underlying the specific regulation, see also 49 CFR § 222.1:

The purpose of this part is to provide for safety at public highway-rail grade crossings by requiring locomotive horn use at public highway-rail grade crossings except in quiet zones established and maintained in accordance with this part.

-14-

975 F.2d 361, 364 (7th Cir. 1992). Similarly, violations of safety *regulations* promulgated by the Federal Railroad Administration also constitute negligence *per se.* See Schulenberg v. BNSF Ry. Co., 911 F.3d 1276, 1288 (10th Cir. 2018); see also Straub v. BNSF Ry. Co., 909 F.3d 1280, 1285 n.6 (10th Cir. 2018); Waggoner, 2007 WL 4224217.[8]

The "*per se* negligence" liability is not based upon the carrier's negligence, and the duty imposed is  absolute - the railroad "is not excused by any showing of care, however, assiduous." Brady v. Terminal R. Ass'n of St. Louis, 303 U.S. 10, 15 (1938).  Proof of the violation of a regulation such as the one at issue here satisfies the duty and breach requirements for a *prima facie* case. See Kernan v. Am. Dredging Co., 355 U.S. 426, 444–45 (1958). Moreover, a Plaintiff need not prove that the railroad had actual or constructive notice. See e.g. Hoemmelmeyer v. CSX Transportation, Inc., 2005 WL 2124259, *5–6 (S.D.Ohio Aug. 30, 2005).  The same goes for the foreseeability requirement. See McBride, 131 S.Ct. at 2643. And, contributory negligence is not a defense.  45 U.S.C. § 53 ("no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee"); 45 U.S.C. § 54a; see also Martinez v. Burlington N. & Santa Fe Ry. Corp., 276 F.Supp.2d 920, 923–24, 928 (N.D.Ill.2003) ("Defendant's violations of federal railroad safety regulations bars its use of contributory negligence"). To recover for a violation of a railroad regulation, a Plaintiff  need only show: (1) the safety regulation was violated; and that (2) he suffered injuries 'resulting in whole or in part' from the violation. See Richards v. Consol. Rail Corp., 330 F.3d 428, 432 (6th Cir.2003). Interestingly, the Supreme Court has "extended the reach of the principle of negligence *per se* to cover injuries suffered by employees as a result of their employers' regulatory violations, even if the injuries sustained were not of a type that the regulation sought to prevent." Gottshall, 512 U.S. at 543

---

[8]A regulation promulgated by the FRA to establish standards for compliance with a safety act has the force of law and becomes, in effect, part of the statute itself. See e.g. Gregory v. Missouri Pacific R. Co., 32 F.3d 160, 164 n. 8 (5th Cir.1994)(citing Lilly v. Grand Trunk Western R Co., 317 U.S. 481, 488 (1943)); Givens v. Missouri–Kansas–Texas R. Co., 195 F.2d 225, 229 (5th Cir.1952); Mosco v. Baltimore & Ohio R. Co., 817 F.2d 1088, 1091 (4th Cir.1987).

(citing Kernan, 355 U.S. at 432–36.

### D. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE FOR FELA NEGLIGENCE *PER SE*, RESULTING FROM THE RAILROAD'S VIOLATION OF THE HORN RULE, 49 CFR § 222.21(d)

NS argues that the railroad did not breach 49 CFR § 222.21(d) as the locomotive was stopped prior to occupying the crossing, and there were no conflicting highway movements. To support this claim, NS cites to the testimony of Plaintiff's liability experts' Paul Byrnes (Exhibit "D" at 68, 72-73) and Patrick Reilly (Exhibit "E" at 113). Those sections primarily relate to what Plaintiff, not Engineer Czup, *saw* when looking at the road prior to initiating the warning lights. And, Plaintiff testified that the highway was not necessarily clear, as he was looking primarily for ambulances and emergency vehicles ("I'm not saying there wasn't maybe a car coming south or something like that, just maybe a straggler, but there was no fire trucks, ambulances. Those are the kind of things I look for mainly"). Exhibit "A" at 81. Importantly, the duty to determine that there are no conflicting highway movements, as prescribed under 49 CFR § 222.21(d), however, belongs solely to Engineer Czup, not the Conductor. Exhibit "D" at 72, 115; Exhibit "E" at 113. NS claims that Engineer Czup saw no conflicting highway movements. Yet, more significantly, there is no evidence that Engineer Czup himself performed any action whatsoever to satisfy his regulatory duty other than waiting for the Conductor's say so to proceed. Exhibit "B" at 16-17.

Mr. Byrnes testified that the record reflects that, prior to occupying the crossing, there were - in fact - conflicting highway movements approaching the crossing. Exhibit "D" at 115. Indeed, the presence of "conflicting highway movements" is specifically evidenced by the occurrence of the incident itself. Exhibit "D" at 115. Had there been no conflicting highway movements, there would have been no incident. And, given Engineer Czup's elevated position in the locomotive, he should have seen the oncoming headlights of the Wallman vehicle. Exhibit "G" at 14. Engineer Czup, therefore, failed to properly determine that there were no conflicting highway movements as required by the regulation. Exhibit "G" at 13. That means that the horn was required to be sounded for no less than fifteen seconds. 49 CFR § 222.21(d). Significantly, it is undisputed that failure to properly

blow the engine horn therefore violates federal law. Exhibit "C" at 56-57, 59.

Here, there is evidence that fifteen seconds or less elapsed from the moment that Plaintiff first pushed the button to activate the crossing lights until the incident. Exhibit "A" at 192; Exhibit "F" at 54, 68. The horn began to be blown only after the crossing lights were activated. Exhibit "C" at 25. And, the train began to occupy the crossing "immediately" thereafter. Exhibit "C" at 25. Engineer Czup estimated that less than five seconds elapsed from the activation of warning lights till the locomotive was actually occupying the crossing. Exhibit "B" at 23-24. That means, by definition, that the locomotive began to occupy the crossing far less than fifteen seconds after the horn began to be blown. This was substantiated by Mr. Byrnes's reading of the locomotive's electronic data downloads. Exhibit "G" at 13. This, of course, constitutes a violation of 49 CFR § § 222.21(d). Exhibit "G" at 13; Exhibit "H" at 16. Based on this evidence, "a jury could find that the sounding of the horn was out of compliance with the regulation." Eubanks v. Norfolk S. Ry. Co., 875 F. Supp. 2d 896, 904 (N.D. Ind. 2012). And, Defendant does not appear to dispute this claim.

Instead, Defendant claims Plaintiff cannot establish *causation*. To support this argument, Defendant cites to Janero v. Norfolk S. Ry. Co., 2017 WL 993055 (N.D. Ind. Mar. 15, 2017). In Janero, a non FELA case, the Defendant's train was traveling 53 mph as it approached a railroad crossing. The train began to sound its horn "roughly 13 seconds" before entering the crossing. Janero, 2017 WL 993055 *1.[9] The District Court, **applying a non-FELA causation standard** significantly more exacting, and less Plaintiff-friendly - than the Rogers FELA standard (i.e. whether "employer negligence played any part, even the *slightest*, in producing the injury")[10] found that the

---

[9]Janero did not involve a "stopped" locomotive, and therefore 49 CFR § § 222.21(d) was inapplicable. Significantly, the rules for moving trains and stopped trains are *not* identical. The Janero Court interpreted 49 C.F.R. §§ 222.21(a) and (b)(1)(2) to mean that a moving locomotive need only initiate horn blasts at least 15 seconds, but no more than 20 seconds, before the locomotive enters the crossing. Those sections have no application in the instant action. Moreover, there is no similar language in 49 CFR § § 222.21(d), nor does the Defendant attempt to raise such an argument.

[10]Janero is not only inapplicable as it relates to a different clause of the regulation, it is inapposite as the Court is applying a different causation standard. The FELA's "relaxed" causation standard directly impacts the Court's analysis of a summary judgment motion, as the standard applied

-17-

Plaintiff failed to properly establish causation. Indeed, as Janero involved a train moving at 53 miles per hour into a crossing, the "timing" is such that, in order to establish causation, the Plaintiff needed to show - not that the train's position would change - but that the position of the automobile would be different had the horn been sounded earlier. Janero,  2017 WL 993055 *14.  The Plaintiff failed to make such a showing.  Janero,  2017 WL 993055 *14.

In the case *sub judice*, the factual circumstances are markedly different than in Janero. Here, the locomotive was fully stopped, rather than  moving at a rapid speed toward a crossing.  Thus,  49 CFR § 222.21(d) was implicated, not 49 C.F.R. §§ 222.21(a) and (b)(1)(2) as discussed in Janero. Significantly, Plaintiff Gaston does not claim that the Wallman vehicle's actions would have been altered had the horn rule been properly followed (as was argued by the Janero Plaintiff), just that the additional horn blast time prior to occupying the crossing would necessarily have foreclosed the incident. Thus, the railroad's regulatory violation "contributed even slightly to [Plaintiff's] injury" (Van Gorder, 509 F.3d at 269), as the timing of the events indicates that the incident only occurred because Engineer Czup failed to follow the regulation. Indeed, if Engineer Czup had properly blown his horn and waited the prescribed fifteen seconds before occupying the crossing, Wallman's vehicle would have been long past the crossing and the incident would have been completely avoided.

## E.    PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE FOR FELA NEGLIGENCE RESULTING FROM THE RAILROAD'S INSTRUCTION TO PLAINTIFF TO MOVE HIS TRAIN THROUGH THE CROSSING WITHOUT DELAY (RATHER THAN TO FIRST PROVIDE SUFFICIENT 'WARNING' TO TRAFFIC)

Although not specifically addressed in Defendant's papers, Plaintiff is also asserting that NS is negligent for failing to provide Plaintiff a reasonably safe workplace, as NS  instructed Plaintiff to get his train moving without any delay and thus failed to instruct Plaintiff to provide sufficient warning to traffic before occupying the Route 7/Nichols Bakery crossing.  See Exhibit "E" at 35; Exhibit "G" at 3, 4, 13, 15; Exhibit "I" at 4.

---

in determining whether the evidence is sufficient to send a case to the jury under the FELA is "significantly broader than the standard applied in common law negligence actions." Metcalfe v. Atchison, Topeka and Santa Fe Railway Company, 491 F.2d 892 (10th Cir.1973).

FELA obligates a railroad to properly prescribe, promulgate, and/or enforce adequate rules, procedures, and regulations for the safe operation of its equipment, tools, machinery, and appliances. See Moore v. Chesapeake & Ohio Ry., 649 F.2d 1004 (4th Cir. 1981); Phillips v. Chesapeake & Ohio Ry., 475 F.2d 22 (4th Cir. 1973). And, even when the railroad takes precautions for an employee's safety, it cannot escape liability if further remedial measures were both possible and reasonable yet not effectuated. See e.g. Williams v. Long Island R.R., 196 F.3d 402 (2d Cir. 1999); Rodriguez v. Delray Connecting R.R., 473 F.2d 819 (6th Cir. 1973). And in determining whether a railroad is negligent for failing to adopt such safer alternative measures, the jury may consider whether the defendant has employed them in other facilities, they are customarily used in the industry or by other railroads, and whether a reasonably prudent person would have adopted them under similar circumstances.  See e.g. Williams, 196 F.3d 402; Rodriguez, 473 F.2d 819.

FRA Grade Crossing Safety Standards provide that "a highway-rail grade crossing warning system … shall provide [no] less than 20 seconds warning time for the normal operation of through trains before the grade crossing is occupied." 49 CFR § 234.225. Plaintiff's Expert Paul Byrnes has opined that the *intent* of 49 CFR § 234.225 is that motorists approaching a public highway-rail grade crossing with automatic warning devices not yet activated be provided a minimum of 20 seconds warning of approach of a train or locomotive movement before it enters the crossing.  See Exhibit "G" at 12.[11]  As this case does not involve a "through train," though, Plaintiff is therefore not asserting a regulatory - negligence *per se* - violation of 49 CFR § 234.225. Rather, he asserts that NS was negligent as it failed to provide Plaintiff with a safe workplace when it instructed Plaintiff to activate the SR7 crossing warning lights and begin train movement without waiting for the devices to provide a reasonable warning before moving into the crossing.  Exhibit "G" at 12. In other words,

---

[11]Mr. Byrnes possesses over twenty years of experience working as a locomotive engineer; thereafter, he spent three years working with the FRA in Washington D.C., and over ten years working as a railroad safety consultant and attorney.  See Haager v. Chicago Rail Link, L.L.C., 232 F.R.D. 289, 293 (N.D. Ill. 2005).

the regulation evidences an industry safety standard.[12]

Here, NS had a duty to Mr. Gaston that it breached when NS supervision failed to instruct Plaintiff to wait for proper warnings to be made to passing traffic before occupying the Route 7/Nichols Bakery crossing.  Plaintiff testified that he was instructed to turn the lights on, get on the side step of the locomotive, ride across the crossing, then shut the lights off.  Exhibit "A" at 75.  In this regard, the instruction was clear.  Plaintiff was to "get moving" so as not to cause any delays.  Exhibit "A" at 186-87.  This instruction, however, ignores the necessity of timed warnings that provide safety to both the crew and to road traffic.  In the case at bar, both Defendant Wallman and the Plaintiff estimated that the elapsed time from the initiation of the crossing's flashing lights to collision was substantially less than 20 seconds.  Wallman estimated that from the activation of the lights to impact at less than 10 seconds (Exhibit "F" at 54, 68) while Gaston estimated it at fifteen seconds (Exhibit "A" at 192). Thus, NS instructed the Plaintiff to violate the industry standard at this specific crossing.  If the safety standard of 20 seconds had been met, the Wallman vehicle would have been long past the Route 7/Nichols Bakery crossing and the incident would never have occurred.  Thus, as with the instruction to stand on the locomotive ladder,  there is clearly sufficient (i.e. "more than a scintilla") of evidence for the Plaintiff to meet the FELA's Plaintiff-friendly causation standard, as well as for a reasonable jury to find that NS's negligence played some role, even the slightest, in producing plaintiff's injury.  See Borger, 571 F.3d at 565.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment should be DENIED.

BARISH ROSENTHAL

BY:  /s/ Samuel J. Rosenthal

Dated: April 17, 2020                              SAMUEL J. ROSNTHAL, ESQUIRE

---

[12]NS operating rules similarly endorse a 20 second wait time. Exhibit "G" at 3, 4, 13; Exhibit "I", at  4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| MICHAEL GASTON | : |
| | : |
| Plaintiff, | : CASE NO. 2:17-cv-1151 |
| v. | : |
| | : Judge James L. Graham |
| NORFOLK SOUTHERN RAILWAY COMPANY | : |
| | : |
| and | : JURY TRIAL DEMANDED |
| | : |
| ALEXANDRA B. WALLMAN | : |
| | : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2020, a true and correct copy of Plaintiff's

Response to Motion for Summary Judgement was served via electronic filing on the following:

Lee Evans, Esquire
DICKIE McCAMEY
250 Civic Center Drive, Suite 280
Columbus, OH 43215

BARISH ROSENTHAL

BY:  /s/ Samuel J. Rosenthal
Dated: April 17, 2020                    SAMUEL J. ROSNTHAL, ESQUIRE